May it please the Court, Carolyn Alexander for Appellant Mitch Morrow, I'd like to reserve five minutes for rebuttal. In this case, the District Court erred when it incorrectly determined that Petitioner's Trial Counsel Stephen Pickens was constitutionally ineffective for failing to investigate and present various defenses. Extreme emotional disturbance, self-defense in defense of others as to his parents' murders, lack of intent as to his little sister's murder, and insanity. Considering all the evidence that was before the State Post-Conviction Court and the District Court in the evidentiary hearing, the District Court was incorrect and Petitioner was not entitled to relief for two reasons. First of all, none of the evidence, including the new evidence presented in the Federal Habeas Proceeding, was available at the time of trial. And two, even if that evidence was available, it did not establish a defense under State law. The State, in its appellant's brief, had addressed the issue of whether the District Court erred in granting an evidentiary hearing. I won't be addressing that issue unless the Court has specific questions regarding that. The issue is adequately presented in the brief. What I would like to focus on is the State law defenses, and I'd like to discuss, I think, some confusion in some of those defenses, if I might. Again, no defenses were available under State law, even considering all the evidence that was presented to both the State Court and the District Court. That's at that time. At that time, yes, Your Honor, at the time of trial. The time of trial. The post-conviction court made three pertinent factual findings. First of all, child – the evidence of childhood trauma would not have established any defense. Number two, Petitioner's mental defense wouldn't have established any defense. And three, Petitioner's extended family history was hindsight. Those factual findings were not rebutted by clear and convincing evidence, even considering the new evidence in the evidentiary hearing. Would any of those, assuming that they didn't present a defense to the murder charges, would any of them have been pertinent on sentencing issues or the facts relating to them? Well, they would have. Certainly, the evidence would not have had to establish a defense for purposes of mitigating – for mitigation and sentencing. However, that leaves the first point, which is none of the evidence was available at the time of trial. First of all, the trial – But you suppose that counsel undertook a competent investigation, thorough investigation, before – Well, correct, Your Honor. But the evidence that Petitioner says counsel should have discovered, still, he didn't show that it was available at the time of trial. Many of the witnesses changed their stories. At the time of trial, they weren't disclosing the abuse that they later disclosed in the state post-conviction proceeding and in the evidentiary hearing. So counsel's investigation was reasonable simply because he couldn't find any of this evidence. It wasn't available. As to sentencing, the trial court asked Petitioner twice, if not three times, explain this to me. Explain this to me. Why did this happen? Petitioner said to the trial court, first of all, well, Your Honor, I'm confused about that myself. Petitioner then said, when the trial court asked again, well, I was in great fear that day. And the trial court jumped on that and said, that day? And Petitioner said, well, not exactly that day. Maybe earlier in the week or it happened a lot. And that was all he was saying. For the reasons stated in the brief under the facts, Jody Arlington, Petitioner's sister, was not available. Her attorney was protecting her because she was a potential suspect in the murders, wouldn't allow Pickens access to her. She also says in her affidavit ---- If it had been subpoenaed, is there any way they could have gotten in contact with her beforehand? Well, I suppose Petitioner's counsel could have sought a subpoena. But what Thad Geyer, Jody's attorney, says is, I was protecting her because she was a suspect. I let her cooperate with the prosecution because I thought it was in her best interest for that reason. Trial counsel Pickens then said in the evidentiary hearing, had she been compelled by subpoena, she would have asserted her Fifth Amendment right. Jody herself says in her affidavit in the habeas proceeding, I was considered a suspect. In addition, I didn't want my friends to know about my redneck family. I wanted to be a normal kid. I didn't want to talk about that stuff. So there were several reasons why she was unavailable and couldn't have provided that information. Kathy Ackerson, her best friend, was equivocal. She never saw any of the abuse except for one slap two years before the murders, and that was a slap of Jody by Jody's mother. She never saw any abuse of Petitioner himself. And in her second affidavit in the habeas proceeding, she said, I couldn't substantiate any abuse. I never saw any marks that Jody said were attributed to beatings by her parents. Grandma Betty Ramirez, Petitioner's maternal grandmother, trial counsel testified at the time. I talked to her several times, and all she told me was Jody did it. Billy didn't do it. Now, the fact that she changed her story later on doesn't make trial counsel's investigation unreasonable. I'd like to talk first about extreme emotional disturbance. When you read the appellant's brief and the appellee's brief, it's like reading two different bodies of state law, and I want to clear up that confusion. Under Oregon law, extreme emotional disturbance, or EED, is not a defense to aggravated murder, and Petitioner concedes that. It has never been a defense. Was that a law in 19 at the time of the trial? Yes, it was, Your Honor. It has never been. It has never been a defense to aggravated murder. That's correct, Your Honor. That is correct. It has never been a defense to aggravated murder. What was the case at that time that made that clear? I think the case law has always made that clear. Which case should I look at? If I were to read it, it would say extreme emotional distress is not a defense to aggravated murder. Back in the time of this trial, back in 19, what was it? 1984. 1984. Both State v. Moore and State v. Running make it very, very clear that it has never, never been a defense to aggravated murder. And if you read those cases, Your Honor, it explains it. I already have. I'll read them. Yes. I think I would rely on those cases and other cases that I cited in the brief, but particularly Moore and Running. Now, a defendant is entitled to an instruction on intentional murder under two conditions. One, the defendant is charged with intentional murder in the indictment. And number two, if intentional murder is factually a lesser occluded offense of aggravated murder. So under those two circumstances, a defendant's entitled to a jury instruction. Now, in State v. Moore, the defendant was charged with two counts of intentional murder in addition to two counts of aggravated murder. So he was entitled to the instruction, and he put on an EED defense. That's not Petitioner's case. He was not charged with intentional murder. A review of the indictment shows that he was charged with three counts of aggravated murder under 163-095, sub ones of D. The aggravating factor in this case was multiple murders in the same criminal episode. I think it's interesting, though, that, you know, they still had to prove intent, correct? Oh, that's correct, Your Honor. They had to prove intent. Oh, sure. Absolutely. The legislature said in this particular aggravated murder, we're not going to allow you to use extreme emotional defense of intent. It's alchemy. Exactly, Your Honor. And that was essentially the argument that was raised in both Moore and Running, that, well, just because the State has to prove the element of intent, then we get to put on a defense of EED. As I recall here, there was an instruction given on manslaughter. Correct. What was that all about? Counsel had one argument, and that was that Petitioner didn't intend to kill his little sister, Becky. And that's actually a good question, Your Honor, because lack of intent is one of the defenses that Petitioner says should have been put on. There was ample evidence of intent, but there was one piece that arguably showed he didn't have the intent, and that was the fact that he took Becky up to Jody's room and said, keep her here. So that at least had been some intent to protect her rather than kill her. That was all counsel had. That's why counsel made the argument and asked for the manslaughter instruction, and that's why the court gave it. Under Oregon law, you don't get an instruction unless there's evidence to support it. That was some evidence. It wasn't compelling evidence, but that's all he had, so that's what he put on. And again, EED is not a defense to manslaughter. It's only a defense to intentional murder under state law. So under Isom and Naylor, which is a 1981- How does he prove that he- how does he prove- He just can't rely on extreme emotional defense to prove that- or not to prove, but to show that he didn't have the intent? What does he- what does it- What does it do? Yeah. Well, extreme emotional disturbance is a legislative creation that doesn't necessarily disprove intent. What the case law says is you still have the intent, but we find you less culpable because of extreme emotional disturbance. It's really the codification of California's heat of passion, common law defense, and it's very much like that. So we find you have the intent, but because of these special circumstances, your emotional state will reduce that to manslaughter. So Petitioner wasn't entitled to a lesser-included instruction on intentional murder because he wasn't charged. So the question is, well, was intentional murder factually a lesser included to aggravated murder in this case? Well, what State v. Eisen says, relying on the 1981 Naylor case, is that if there is no dispute as to the aggravating factor, then a jury cannot find you guilty only of intentional murder and not guilty of aggravated murder. So because a jury can't find you guilty only of intentional murder, you're not entitled to the instruction because it's not factually a lesser-included offense. So Petitioner was not entitled to an instruction on intentional murder, and therefore the EED defense was simply not available as a matter of law. Petitioner's argument is really the backdoor way of asserting an EED defense to aggravated murder, and that argument was rejected in both Moore and Running. Every time it's been presented to the Oregon Supreme Court, the Oregon Supreme Court, as they said in Running, is, read our lips, it's not a defense to aggravated murder. And if you're not entitled to a jury instruction on intentional murder, it's not available as a matter of law. A couple of points on self-defense as well. Again, I'd stress the point, and again, this is self-defense in defense of others, his sister Jody, regarding the parents' murders. These two people were sound asleep on the couch and in the bed. There is absolutely no dispute of fact as to the fact that these folks were sleeping. So as a matter of law, there is no imminent threat of harm. And in fact, what the statute, the self-defense statute says under Oregon law, is that there must be an imminent threat of deadly force or great bodily harm. And that simply was missing in this case. Now, Petitioner argues, well, but Oregon recognizes battered women's syndrome and battered child syndrome evidence. Well, yes, it does, but not in this context. What State v. Middleton says that Petitioner relies on is BWS evidence. Sure, that's admissible. But in Middleton, it was admissible to show the victim's state of mind or to explain the victim's actions, why she didn't report the abuse, why she stayed with the abuser. But it doesn't modify the traditional defense of self-defense. Self-defense, like EED under Oregon, law is very clear. Unless there's an imminent threat of deadly force or great bodily harm, the defense as a matter of law is not available. Now, so what about in the sentencing context? Why wasn't there IAC for failure to bring all of this out in terms of the sentence that was imposed? Because, again, the evidence wasn't available at the time of trial. Pickens did do investigation. I mean, there really is no doubt about that on review of this record. It's whether the investigation was enough or was reasonable. There was, I thought, an expert who gave testimony that the amount of investigator time was very light for a triple murder, right? And a lot of the investigator's time was spent talking to the lawyer. So at least if I recall correctly, there was some expert testimony criticizing the amount of investigation. I'm glad you asked that question, Your Honor. Two points, one factual, one legal. First of all, if you review counsel's billing statement that's in the record, you'll see that actually he spent 125 hours himself in investigation reviewing records. And you can simply add up the number of hours in that billing statement to see how much time he spent. But in terms of the legal issue and what weight an expert's opinion should be given, the Strickland standard is a mixed question of fact and law under the law of this circuit. It's simply not subject to expert opinion. In other words, an expert opinion's, the basis of an expert's opinion has to be based in fact and it has to be based in law. Simply because an expert says, well, that's not reasonable. That's a court, that's a question this court decides, not an expert. This court has not reached that issue. But the Eleventh Circuit has said exactly that in Freund v. Buttersworth. And that's 165 F. 3rd, 839, 1999. It doesn't form our decision as law, does it? No, it doesn't. But in Ames v. Calderon, this circuit questioned whether that was a question of law or whether that was a question of fact. But simply that... I probably agree that it's probably our ultimate call on the question of whether it's reasonable or not. But certainly I don't see any harm in listening to what an expert might have to say. Oh, certainly. It just helps us better understand what the lay of the land was back in 1984. Absolutely right. Absolutely right, Your Honor. But it is a question for this court to decide, giving that the weight it deserves. But nonetheless, a 109-page transcript, taking notes during interviews, producing reports, that may go to the ultimate issue of reasonableness, but it's not constitutionally mandated. If you do 50 hours of investigation, whether you have notes or not, and you can't produce anything that helps your client, that's not unreasonable. And moreover, your client, then, isn't prejudiced by your failure to find something. It's evident... May I go back to the sentencing issue that I don't think you addressed? As sentencing, the trial court stated, I have heard not one scrap of evidence to mitigate what you did. What occurred was not done in the heat of passion. It was cold-blooded. And to this day, I have yet to hear a satisfactory explanation or reason for the conduct. And frankly, you've put me in a position where I'm sentencing you from a lack of information. Why doesn't that show prejudice in the sentencing context? Well, two points, Your Honor. First of all, that statement by the trial court came after it repeatedly asked Petitioner, explain this to me. And Petitioner couldn't, wouldn't, I don't know, but didn't. Second of all, there's still to establish prejudice, Petitioner still has to show that there was evidence available at that time that would have mitigated sentencing and would have produced a decision by the trial court imposing concurrent rather than consecutive sentences for different victims. It looks like the trial judge was searching for something, for some reason to sentence other than the way he felt he was compared to. That's very possible, Your Honor. It's really Gilley's own story. Did he testify in the sentencing phase? No, no. He was asked to, and he declined to comment, really, more than what I've indicated that he said. And, in fact, the post-conviction court found that he was adamant about not testifying, and that factual finding is not rebutted by any of the evidence that was produced in the evidentiary hearing or in the habeas proceeding. I see my time is up. Are there further questions? I just have one question. Is the insanity, the potential for an insanity defense, is that separate and distinct from EED? Yes, it is, Your Honor. It's a separate whole? Absolutely. Yes, it's a separate statutory scheme. And I would point the court to the three experts who found no mental defense and concluded that Petitioner could appreciate the criminality of his conduct and conform his conduct to the requirements of the law, which is the requirement for insanity defense. Okay. Thank you. Thank you, counsel. We'll give you a minute for rebuttal, even though your time is up. And, Mr. Balski, we're going to give your colleague an extra minute, so if you need one, take one, too. Mr. Court, I'm Dennis Balski, and I represent Billy Gilley. And I want to start out by taking an opposite position from the state who says, well, all of this evidence wasn't available at the time of the trial. It was available. It wasn't discovered. The ample evidence in this record of the lack of investigation in the case cries out for relief, and the magistrate judge and the district court judge who evaluated the testimony of those witnesses found that the evidence was available, but it hadn't been discovered due to the lack of investigation. And just to give you a couple of examples, she mentions Kathy Akerson and that her testimony would have been equivocal, but Kathy Akerson is the one who said she saw the mother say the day that the murders occur to Jody, you're going to get beat so hard that when Kathy went home, she feared for Jody's safety. There's nothing equivocal about that. She didn't mention Henry Leinbaugh, the man with the tree service, who would see the father throwing tree limbs, aiming tree limbs at Billy below that injured Billy, or that saw him when he'd call him stupid to get his attention and punch him so hard in the head that he said he thought it would knock him unconscious, and who said that Billy lived in terror. All of that the district court found and the evidence showed was available, but it wasn't found because there was no investigation done. There was 10 hours total for a triple homicide case done by the investigator in this case. Counsel, how would that evidence have impacted the guilty verdict? It would have impacted it in four separate ways, and any one of the which would entitle us to relief. In other words, and again, a good place to start is who were the courts that looked at this? Judge Ashmanskas, the magistrate judge, spent many years on the circuit court as an Oregon state judge and is very familiar with the state law. He's on one of the three EED cases that's cited in the briefing that says the law on EED. The district court judge who heard the objection to the states, Judge Anna Brown, who also spent numerous years on the circuit court bench in Oregon. So you had two judges in the federal court who were state court judges who were intimately familiar with the law on lack of intent, guilty but insane, EED, self-defense, and defense of others, and who found that under the evidence here, that any one of those four defenses would have resulted either in a manslaughter or a guilty but insane verdict. So under Strickland, the prejudice question is, would any one of those four defenses have resulted be reasonably likely to result in a different outcome? These two district court judges, the magistrate judge and the district court judge, both found with no problem that all four were available. We probably, at least speaking for myself, as much as I might respect the district court judge or the magistrate judge and note they have Oregon law experience, I think I have to look at Oregon cases like Supreme Court cases to decide if the defenses were available. Sure. So what are the best cases on each defense? Well, first of all, we don't even need to look at cases on guilty but insane or lack of intent. The State's argument is EED and self-defense, those weren't available as a matter of law. They don't dispute that guilty but insane and lack of intent. On guilty but insane, they say there were several opinions that he was saying so rejected factually. Well, the district court, though, the magistrate judge and the district court, found to the contrary based on the live testimony of Dr. Stanulis. And what the State doesn't say but that makes all the difference, the people that did the evaluations way back when, none of them knew about the severe abuse. None of them knew about the head trauma. They were in the dark. The only expert in this case who was ever made aware of all that happened to Billy Gilly was Dr. Stanulis. He testified live at the evidentiary hearing. The magistrate judge's findings were based on his testimony, and the State didn't call a contrary expert to dispute what he said. So we have a very strong record in terms of the guilty but insane. And the other thing is because they didn't investigate and find out the head trauma, nobody ever had any neuropsychological testing done on him whatsoever. But once it was done, it showed the organic brain damage and the post-traumatic syndrome, stress disorder, both of which the district court found existed back in 1984 at the time of trial. And that could form the basis for an insanity defense? Yes. In our brief, we set out the legal standard in Oregon, the testimony before the district court, and the findings, all that are consistent that there would have been an instruction on guilty but insane, and the additional finding that had the instruction been given, there was a reasonable likelihood that guilty but insane or manslaughter would have been found. What would have happened if there had been a verdict of guilty but insane? Would he have been sent to some hospital? Yes. He's sent to a hospital, and then if and when he's found to be sane, he's released. And if a federal court gives habeas relief based on IAC for not raising that defense, what are the federal court's options? There is only one option, send it back. Say what? Do you have to retry it? Yes. Or release him? The federal court, can the federal court say send him to an insane hospital? No. No, you'd have to send it back for a retrial and let the jury make the decision based on the evidence that we now have as to whether he was guilty but insane. And then if they agreed, then he'd go to the state mental hospital. How about lack of intent? You were going to address that. Lack of intent. How does that fit that in for me? Lack of intent is really the linchpin to two separate issues, and lack of intent is the one on which the state really leads you all astray the most. And before I say that the state led you astray, I have to fall on the sword and say I made one error in my briefing on the evidentiary hearing in saying that after the judge found that there was no procedural default, I said that the state objected and then Judge Brown reviewed it, but they hadn't objected, and I misstated that and I apologize for that. But let's get to the lack of intent and what the state had to say about that and why you should place very little credibility in what the state's telling you, and you should really look at the cases that they cite in their briefing and the facts that they cite. Here's what they say in their reply brief at page 25. They say Petitioner mischaracterized the record when he states that the, quote, jury had great difficulty reaching a verdict on the charge of intentionally killing Becky. Petitioner uses that mischaracterization to imply that there was little evidence of intent as to Becky's murder. They then go on to argue that, quote, it's completely speculative that it was the charge concerning Becky that the jury had difficulty deciding, quote, and even more speculative that the issue was intent, end quote. Well, if you'll turn to volume one of the excerpt of record there and turn to page 131, you'll see on 131 they reached the verdict on November 15th on two of the three charges. In the next couple pages, the judge talks to him about, do you want to go home and come back tomorrow to deliberate the third? And they say yes. If you turn to 133, it shows that the deliberations resumed on November 16th, the next day, and they deliberated from 9 a.m. to 1055 a.m., and then they reached the verdict. On page 134, the record shows the verdict on mom's death, guilty. What was the date? November 15th, the day before. That's when it was signed by the jury. You look at the verdict on dad, guilty. When was that dated? The night before, November 15th, 1984. You look at Becky charge. There's no date. And the judge says, I'll put in today's date. That date, November the 16th, the day on which the jury actually deliberated on the one verdict that it had trouble reaching, the verdict of Becky. There's no mischaracterization here, and there's no misrepresentation. The jury had trouble reaching the verdict on Becky's case, the one involving no intent. Did they send any notes out to the judge to say we're having, you know, we don't understand the instruction, we're hung, or we can't agree? Did they send out anything like that? No. What they did was, late at 915 at night on the 15th, they said, judge, we can't reach a verdict. They were just tired. And they said, well, we've got two verdicts, but we can't reach one on the third. And that's when he sends them home for the night, and they come back and deliberate two more hours before Becky's. And you'll also recall that they said it's speculation that it was Becky's case they were stuck on, but, quote, even more speculative that the issue was intent. Well, the state's exaggerating. If you turn to the excerpt of record to page 115, you'll find defense counsel's one-and-a-half-page closing argument. And the only defense he articulates, which is half of his closing argument, is lack of intent. At page 115 of the excerpt of record, here's his whole argument on intent and half of his closing argument. Quote, the crime that I feel is the one that is proven beyond a reasonable doubt and proven comfortably is manslaughter. The reason I say that is that there's nothing to indicate that there was any intent on Billy's part when these actions began to kill his mother and his father. There was no intent on his part to kill Becky. Why would he have ever taken her upstairs? Unfortunately for Becky, it is tragic she came down the stairs. I'm sure the screaming started. The first thing that happens is someone wants to quiet that. I don't think that at that point he intended to kill her at all either, but something needed to be done in regard to the screaming. Again, that was half of his closing argument. It was that there was no intent to kill Becky. The court gave the manslaughter instruction on reckless indifference to human life. And the only verdict the jury had trouble with, because the only defense argued in the whole trial of 109 pages was a lack of intent. Counsel, as I understood counsel's argument, she said that EED was not available to show lack of intent for manslaughter. Yeah. She's – oh, I'm just – When you asked her is there a case, she should have said Reams, the one she cited in her brief. But Reams didn't say that it's not a defense to aggravated murder. It simply said – I'll have to pull it out here. I'm talking about manslaughter because I had asked her about manslaughter. She said the EED would not be available even to show lack of intent for manslaughter. That's right. And that's what I'm talking about on the EED defense. The question is that the cases she said to you all happened in the 90s. They hadn't been decided in 84. What had happened was in 81 the legislature changed the statute and said that EED is only a defense to intentional murder. That's what they said. They didn't say anything about aggravated murder, but they did say it's not a defense to intentional murder. And here Billy, of course, was charged with – and this is where Becky is important, again, on intent. They charged him with intentionally murdering his dad. This is count one. And intentionally murdering his mom and his little sister, both of them, as the aggravator, intending to kill them as well. Their whole argument about EED not being available as a lesser defense in this case is this, that there's got to be some evidence that would have caused the judge to give the lesser included instruction. Well, we have it. There was the argument on no intent to kill Becky. If you look at the charge in this case – and this is another inaccuracy in the briefing by the State – the State says that the aggravator is that during the same episode you kill another person. That's not it. You must murder another person. And murder requires intent. And that's exactly what the judge charged. If you go back and look at the jury charge here, he said to the jury, for instance, on count one, you must find that he intentionally killed dad, and to find him guilty of aggravated murder, you must find he intentionally killed mom and Becky. Only then can you bring it back. So in this case, defense counsel's argument with no investigation, that there was no intent to kill Becky, that was enough for the judge to say, oh, there's a dispute on the intent to kill Becky. And if that's the aggravator, then there's some evidence on which I should charge on the lesser included offense of EED as a defense to intentional murder. Because he's got a way to knock out the aggravator. That brings him down to intentional murder because it's not aggravated. Now there's the lesser offense. Now EED is a proper instruction. I know it's a lot. No, I'm just – You have to really roll around in the facts. You've got to really roll around in the Oregon law. But if you do that, you'll see in all three of the Oregon Supreme Court cases cited by them and by me, for that matter, and running on the facts is indistinguishable. In all of those cases, the trial court judge gave an EED defense, and he said, but it's only a defense to the lesser included of intentional murder. And that's all we're asking for. And that's what he said. In all three of the cases, the appellant tried to say, well, wait, I should have gotten that instruction for aggravated murder, too, in the Oregon Supreme Court. Every time he said, no, no, no, it's not a defense to aggravated murder. But that's not what we're asking for. If you were to prevail and get a retrial, which law would apply? The current law? At a retrial, would you get – On EED or self-defense? Yeah, would you get – Well, I guess if the law changed in such a way as to hurt me, I'd have an ex post facto argument. If it changed in a way to help me, I'd have an argument that you apply the current law. And it's not something I looked at, so I wouldn't swear to what the right answer is. But that's not for us to worry about. Again, our focus here is only on whether there was one defense. And let me boil it all down, okay? I think this says it all. You've now got evidence that should have but wasn't found that shows he was severely mentally and physically beaten by his parents, that he had PTSD and organic brain damage. And what the state is essentially saying is that if they had done that investigation and they had all that evidence, which the court found that they should have, that Oregon law was so bad that he would have had no argument under any defense. Well, that's just not – that's not there. That's not right. And again, the state didn't argue that guilty but insane or lack of intent were unavailable under the law. They just did disagree with me on the facts. But the facts were found by the district court, and you've got to find they were clearly erroneous. And if you review this record, there is no way that you're going to find that the fact findings in the district court were clearly erroneous. And if she has something to say about that, I would love to hear it because the fact findings are solid. And the court heard the evidence from Dr. Stanielis, again, live, the only witness who had been made aware of all the severe abuse and emotional trauma that happened to Billy Gilley. I know there are two other issues in defense of others and whatnot, but Jeff Rawlinson asked a hard question about sentencing. What's your response to the sentencing question? Well, sentencing is a gimme. You know, it doesn't take any effort on my part to convince – I shouldn't think it would take any argument to convince anybody that he got a new sentencing hearing. Again, if you've got evidence out there that you didn't find that he was severely physically and emotionally abused, that he was hit in the way he was, that he had the head injuries and the damage psychologically that he had, obviously that's going to be relevant at sentencing as well as any one of these. What's critical here, I gather, is not running the sentences consecutively but proposing a concurrent sentence. That would be the argument, that he'd go back for new sentencing and try to argue for concurrent sentences because he got consecutive sentences. That's right. And so the prejudice would be that he got a longer sentence than he otherwise would have gotten. Now, this is just a sentencing hearing after a conviction. Yes. Two-part death penalty. No, it wasn't a death penalty case. It was they all showed up for sentencing and, you know, the judge says to Billy, do you have anything to say? And he says a few words and that's what she's talking about, but it wasn't a hearing where witnesses were called or anything like that. It's not a capital case. But is there discretion in Oregon for the sentencing hearing to have to entertain? You can ask a judge to call live witnesses, including expert witnesses, if you wanted to, sure. There would be nothing in the law to prohibit that. I'm hard-pressed to give up a little bit of time when I feel I've got so much to say. Is there any of the four defenses that any of the three of you have any question about? Because I would sure love to address any concern that you have because I'm convinced that the courts were right in finding that all four were available. And I'll end it there. You're pretty close to the end of your time. I'll take the hint. Thank you. Okay. One comment about EED. Petitioner's argument was clearly rejected in State v. Iceland, so I would encourage the Court to read that opinion. What note? State v. Iceland, I-S-O-N. That's cited in the reply brief. When was that decided? State v. Iceland, I believe, was 1992. But Iceland relied on State v. Naylor, which was 1981. And that talks about the fact that intentional murder must be factually a lesser included. And here's what the Court in Iceland said. An argument that the defendant was not acting intentionally when he caused the individual's death does not distinguish intentional murder from aggravated murder. That argument has been rejected by the Oregon Supreme Court. Now, in running, the defendant did get lesser included instruction when he was not charged with intentional murder and put on an EED defense. I think that was error under Iceland and Naylor. But that was never an issue in the case. The State didn't challenge his request for a lesser included instruction or the opportunity to put on the EED defense. I think if- See, you know, the problem I have with your argument, though, is that we have to take a look at this trial proceeding back in 1984, look at the state of the law at that time, and ask whether a reasonably competent lawyer would have conducted an investigation, earned this information, and then asked for an EED instruction. Correct, Your Honor. But again, as counsel points out in State v. Reams, the Court said EED is only a defense to intentional murder. He can't get to intentional murder. He couldn't have asserted that- He gave us an outline of a way to do it. It seems reasonable. Rejected- When you look at the killing of Becky- Rejected by State v. Eisen, Your Honor. That very argument has been rejected by the Oregon Supreme Court. And the Court in Moran Runny has said never a defense to aggravated murder. Well, that sort of gets into understanding what the state of Oregon law was back in 1980. Correct, Your Honor. Correct, Your Honor. I see I'm out of time. You have to bring it to a close. We do appreciate your argument and Mr. Belsky's argument. And Gilly v. Morrow shall be submitted. Thank you. Court will adjourn until tomorrow.
judges: Gould, Paez, Rawlinson